IN THE UNITED STATES DISTRICT COURT
FOR EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

| | |
|---|---|
| GENIA LOCKLEAR,<br>    Plaintiff,<br><br>vs<br><br>OLD MAIN PHARMACY, INC.<br><br>    Defendant. | **COMPLAINT**<br>(Jury Trial Demanded) |

NOW COMES Plaintiff Genia Locklear, by and through undersigned counsel complaining of the acts of the defendant, Old Main Pharmacy, Inc. and says:

### THE PARTIES

1. Plaintiff Genia Locklear (hereinafter "Ms. Locklear") is an adult female and resident of Maxton, Robeson County, North Carolina. At all times herein relevant, Ms. Locklear was an employee of the defendant.

2. Defendant Old Main Pharmacy, Inc. is a corporation organized and operating under the laws of the State of North Carolina and is engaged in the business of compounding, preparing and dispensing drugs.

### JURISDICTION

3. This Court has subject matter jurisdiction over this action pursuant to 31 U.S.C. §3732(a) and 28 U.S.C. §1331. The Court has pendent jurisdiction over Plaintiff's state law claims.

### VENUE

4. Venue in the Eastern District of North Carolina is proper pursuant to 28 U.S.C. §1391

because all or a substantial part of the events or omissions which give rise to the present claims occurred in this judicial district, and more specifically within the County of Robeson, State of North Carolina.

## FACTS

5. Ms. Locklear was employed by the defendant at its Pembroke, North Carolina location on or about March 01, 2011. The last position held by Ms. Locklear was as a store manager.

6. In February 2015, the Pharmacy had an inspection by the North Carolina Board of Pharmacy (hereinafter "NCBOP"). The NCBOP noted multiple deficiencies. Mr. Justin Daniel, the Pharmacist and Pharmacy owner gave Ms. Locklear partial responsibility for developing a Plan of Correction compliant with the NCBOP regulations.

7. While working on the Plan of Correction, Ms. Locklear began to see irregularities in the Pharmacy's compliance with the rules and regulations promulgated by the NCBOP.

8. Ms. Locklear discussed her concerns with her Pharmacist in Charge, but received no response.

9. On or about March 13, 2015, Ms. Locklear received a call from Mr. Justin Daniel's massage therapist. She told Ms. Locklear that Mr. Justin Daniel was delusional and confused and that she was calling Emergency Medical Services (EMS) and that Ms. Locklear should come to the salon.

10. Ms. Locklear arrived at the salon before EMS arrived. Mr. Justin Daniel was confused and his balance was poor. Ms. Locklear noticed a white substance in his nose.

11. When EMS arrived, Mr. Justin Daniel refused to allow the EMT to take his vital signs. He was combative and remained unsteady on his feet. The therapist had already called Mr. Justin Daniel's wife and father. Mr. John Daniel who, upon information and belief was father to Mr.

Justin Daniel. When his father arrived, Mr. Justin Daneil left with him

12. Ms. Locklear immediately returned to the pharmacy and went to Ms. Danita Locklear (not related), the Human Resources Manager/Bookkeeper to discuss what had occurred. She was concerned that Mr. Justin Daniel was using drugs. Ms. Locklear was verbally reprimanded for not contacting Ms. Danita Locklear. Upon information and belief, Mr. Justin Daniel was subsequently admitted to an inpatient healthcare facility.

13. In early March, 2015, in the course of her employment, Ms. Locklear was reviewing invoices and the log of the compounds made on site. She noted that the computer showed compound ingredients that did not match with the invoices. She was concerned that the pharmacists were using a substitute ingredient that was less expensive, but billing for a more expensive ingredient. She was also concerned because what she believed to be a controlled substance, ketoprofen was used in the compounds in question. She reported her concerns to Ms. Danita Locklear and to the Pharmacist in Charge, Mr. Brandon McLellan. Neither Ms. Danita Locklear nor Mr. McLellan responded to her concerns.

14. Within the next day or two, Ms. Locklear was working as a cashier. She noticed several tickets which are usually attached to compounds on top of the cash register. Each ticket had a separate individual's name on them. She asked Mr. Alex Strickland, the input technician who enters prescriptions into the billing software and Ms. Linda Davis, another cashier what she was suppose to do with the tickets. Despite the different names on the tickets, Mr. Strickland told her that they were there to be charged and would all be charged to one account called the Bic Mitchium Account, rather than to the individual customers. Ms. Locklear was concerned about the prescriptions for individual customers being billed to one account. She expressed her concern about what she viewed as fraudulent billing and possible waiver of co-pays to both Ms. Danita

Locklear and to Mr. McLellan. She received no response.

15. Upon information and belief, many of these compounds were billed to Federal Health Care Programs, as well as private insurance companies.

16. On or about March 26, 2015, Ms. Locklear met with Don McLeod and Brandon McLellan, Pharmacists in Charge to discuss operations during Mr. Justin Daniel's absence. At the conclusion of the meeting, Ms. Locklear felt ill and left to go to a doctor's appointment.

17. When Ms. Locklear returned from her doctors appointment, Ms. Locklear saw Mr. John Daniel who upon information and belief, is corporate counsel to Old Main Pharmacy and father of Mr. Justin Locklear and Ms. Danita Locklear were talking. Ms. Locklear complained to them about how the earlier meeting went. Mr. John Daniel responded that those issues were in the past and they were going to move forward.

18. Ms. Locklear was out of work on sick leave from March 26, 2015 until April 8, 2015 at the instruction of her physician.

19. When Ms. Locklear returned to work on April 8, 2015, she met with the Pharmacists in Charge to discuss the March 26, 2016 meeting. She discussed the issues related to Mr. Justin Daniel, the compound room and billing. They suggested she take another leave of absence or time off.

20. Subsequently, her physician agreed and suggested that she not return to work until April 13, 2015.

21. On or about April 16, 2015, she was written up for an incident which occurred in February 2015. She was suspended and sent home without pay for five (5) days.

22. On or about April 23, 2015, Mr. McLellan, Pharmacist in Charge sent Ms. Locklear for a drug screen. Ms. Locklear was asked on two (2) additional occasions to return for drug screening.

After two (2) negative test, she refused to return for additional screening.

23. On or about April 27, 2015, Ms. Locklear sent Mr. Justin Daniel a text message telling him that she believe a complaint or report needed to be made to the Board of Pharmacy related to the issues with the compound prescriptions.

24. On or about April 28, 2015, Mr. Justin Daniel responded via email indicating that any problems existing were as a result of her conduct.

25. On April 29, 2015, Ms. Locklear's employment was terminated, allegedly because she failed to complete a contract for a rebate program and as a consequence, the Pharmacy allegedly lost a customer.

26. Subsequently, Ms. Locklear made a complaint to the North Carolina Board of Pharmacy about the issues discussed herein.

## FIRST CAUSE OF ACTION
## 31 U.S.C. § 3730(h)(1)

27. Ms. Locklear incorporates paragraphs 1 through 26 as if fully set forth below.

28. Ms. Locklear engaged in protected conduct when she reported what she believed was fraud to the defendant's management team.

29. Her objection to the conduct could reasonably have led to a viable 31 U.S.C. § 3729 False Claims Act (FCA) action.

30. The defendant knew that Ms. Locklear was engaged in protected conduct.

31. Ms. Locklear was discharged because she engaged in protected conduct.

32. As a direct and proximate cause of the defendant's conduct, Ms. Locklear has suffered and continues to suffer loss of income and emotional distress.

## SECOND CAUSE OF ACTION
## N.C. Gen. Stat. § 1-613

33. Ms. Locklear incorporates paragraphs 1 through 32 as if fully set forth below.

34. Ms. Locklear engaged in protected conduct when she reported what she believed was fraud to the defendant' management team.

35. Her objection to the conduct could reasonably have led to a viable claim under N.C. Gen. Stat. § 1-607.

36. The defendant knew that Ms. Locklear was engaged in protected conduct.

37. Ms. Locklear was discharged because she engaged in protected conduct.

38. As a direct and proximate cause of the defendant's conduct, Ms. Locklear has suffered and continues to suffer loss of income and emotional distress.

## PRAYER FOR RELIEF

WHEREFORE, Ms. Locklear prays the Court:

1. Order that Ms. Locklear be reinstated with the same seniority status;

2. Order the defendant to pay two (2) times the amount of back pay with prejudgment interest;

3. Order the defendant to pay any special damages including emotional distress damages.

4. That it award Ms. Locklear litigation costs and reasonable attorneys' fees; and

5. Order any other relief the Court deems just and reasonable.

This the 19th day of December 2016.

MEYER LAW OFFICES, P.A.

By: /s/ Deborah N. Meyer
Deborah N. Meyer

N.C. State Bar No. 19186  
401 Harrison Oaks Blvd., Ste 321  
Cary, North Carolina 27513  
Telephone: (919) 678-8200  
Facsimile: 919-678-8280  
Email: Dmeyer@meyerlawnc.com  
*Attorney for Plaintiff*

# VERIFICATION

Genia Locklear, being first duly sworn, according to law, deposes and states:

That she is the Plaintiff in the foregoing action; that she has read the foregoing Complaint and knows the contents thereof; that the same is true of her own personal knowledge, except as to matters and things therein stated upon information and belief, and that as to those such matters and things, she verily believes it to be true.

_Genia Locklear_
Genia Locklear

Plaintiff

Subscribed and Sworn to before me this

29th day of November, 2016

_Kristina Williams_
Notary Public

My Commission Expires: August 28, 2021

KRISTINA WILLIAMS
Notary Public, North Carolina
Robeson County
My Commission Expires
August 28, 2021